Case number 13-5856, LaZell Maxwell v. United States of America, arguments not to exceed 15 minutes per side. Mr. Morell for the appellant. Good morning. May it please the court, my name is David Morell and I'm court-appointed counsel for appellant LaZell Maxwell. I'd like to reserve three minutes of my time for rebuttal. The government has already confessed error on the merits of this case. So there's no dispute that Mr. Maxwell received ineffective assistance of counsel when his trial attorney failed to object to his two-count conspiracy indictment on double jeopardy grounds and that Mr. Maxwell was prejudiced as a result. So there's no dispute that one of those convictions is constitutionally infirm and therefore at least must be vacated. The dispute now turns on what this court should do next. Under 28 U.S.C. 2106, it falls to this court to decide what is, quote, just under the circumstances. And under the unusual circumstances of this case, the government's request that this court vacate both counts and both sentences and remand for resentencing on one of them would not be just for two reasons. What is unusual about this case? Well, it also indicates that the court made the intentional decision to sentence this man to 360 months. Your Honor, I respectfully disagree. In this court's decision in Foster, the court indicated that the very purpose of concurrent sentences is to ensure that the aggregate total sentence imposed remains unchanged even if a subsequent count is subsequently vacated. And if that had happened in this case, you wouldn't be here. Isn't that right? That's right, if they were equal length. If they were equal length and one of them got knocked out. But we often, when we knock out one conviction for any reason, because it's flawed in any way, we send the whole thing back for resentencing. So the question is, why wouldn't we just follow our normal procedure here? Your Honor, I would respectfully disagree with the premise that that's the normal procedure. A couple points in response. The first is both parties, both we and the government, believe that this is properly before the court and that under 2106 it properly falls to this court to decide what is just under the circumstances. But secondly, about what you said, the normal procedure, there's actually a number of cases where this court has made exactly the decision in a similar context to this case. The Foster case that I cited in our 28-J letter is one example of that where you had the multiplicity problem and this court— Don't you think Judge Daughtry might know what's our normal procedure a little better than you do? I don't know. You might approach that question, that answer, in a different way. I'm okay. I'm okay. I apologize, Your Honor, but I did want to direct your attention to a few cases where this court has made that decision. So not just the Foster case, but also there's a case called U.S. v. Taylor where, again, you have this multiplicity problem and this court made the decision as to what type of remand it should order. Well, it's certainly case dependent, but it also may be quite true that more often than not the case is going to go back for resentencing. Your Honor, I'm actually not sure. I haven't counted up the cases. Well, here's the fact—here's the nub of the issue here. Your client—the fact that there's one charge versus two charges would have made absolutely no difference, whatever, in the evidence that was presented during the trial, correct? That's correct. Okay. And the district court, when faced with sentencing then, was looking at the totality of the conduct, correct? That's correct, Your Honor. And so while, of course, the district court likely considered the government's request for concurrent sentences, but it may—its sentence might just as easily speak to the fact that it was trying to look—trying to get, given the statutory constraints, trying to get to what seemed to it to be an appropriate overall sentence, given the conduct it had just heard about, right? Your Honor, I think one important distinction to inject into that—your comments—is that the district court had a very easy way to express the sentencing intent that you suggest the court had, and that was to run the sentences concurrently. And it had, at Record Entry 204 in the sentencing memorandum from the government, it had an express request to do that. And so I think what our position is that that decision not to impose concurrent sentences was not just an arbitrary decision to run them consecutively to get to 30 years, but was an intentional decision to allocate the particular—an appropriate and tailored sentence— Okay, so let's look at that. So the judge looks at this and says, if you're conspiring to deal in crack cocaine, that's more serious than heroin. So I'm going to put 240 months on the crack and 120 months on the cocaine. Now we're saying you can't split those into two convictions. You've got to put them back together, and you still have somebody who was dealing in both heroin and crack cocaine. But I— If the conspiracy takes into account all of that. Your Honor, I think that would very well be possible on a different record. Had the district court expressed that intent somewhere within the sentencing transcript that says, look, I'm structuring this by consecutive sentences, but I mean it when I say it's necessary to have 30 years even in the event that one is subsequently vacated. But that's not this case. What indication is there in the record for doing it? And if we don't know, then we send it back and let it be all—let it be clarified. Your Honor, it actually falls to the government to bear that burden of proving that an expanded remedy is appropriate under the circumstances, and that's the Supreme Court's decision in U.S. Bancorp at 513 U.S. 18, where the court explained that when one requests the equitable remedy of vacature, which in this case the government's requesting that remedy for both counts and not just a single count, so it needs to justify the expanded footprint of that remedy. And that falls on the government in this case because they are the party requesting that expanded remedy. And respectfully, Your Honor, on this record and on this sentencing transcript, there's simply no evidence that the district court in fact viewed these sentences as interrelated. And in fact, the government itself in the district court on the 2255 proceedings essentially conceded as much. They conceded, and I quote, that imposition of a consecutive sentence for the second conspiracy count constitutes actual prejudice to the defendant, end quote. Can I ask you a question? I'm not—I'm unable to remember. I mean, when you have a bunch of cases over a period of days, you remember something from one case, and I'm unable to verify that it's this particular case, all right? So let me ask this question and use a shortcut method. Is this the case in which the district court did not talk about concurrent versus consecutive at the sentencing, but then the way the sentence was structured appeared in the judgment? Correct. That discussion did not occur on the record in the sentencing transcript, but it did occur on the papers. And as I mentioned, at record entry 204, the government made its request for coequal concurrent sentences. But then why wouldn't we want, given what has transpired, to have the district court explain what it did and why? Well, I think there's two reasons. First, as I mentioned before, both parties agree that this issue is properly before the court. But I mean—but obviously if there's some need for clarification, typically, again, typically normal procedure is you remand and you ask the district court, you know, do you still want to impose the same sentence or this, or do you want to do something different? Tell us. Your Honor, I think the answer lies in the fact that this court has remanded for resentencing where a single count and a multi-count indictment is vacated. But it's done so that there has to be a predicate finding of interrelatedness, that the two sentences are— I mean, it is the same conduct. It is the same course of conduct, that he was just dealing with two types of drugs. But the way the sentencing structure came out, though, that is not how the court conceptualized those convictions, because again, we had a— Well, you know how the court conceptualized it. If the court didn't tell you, you know what the court did. You know, if you— But you don't have any upstairs knowledge of what the court was thinking. In fact, Mr. Morrell, under most circumstances, if a mistake had been made that you could appeal for your client and there wasn't this multiplicity problem, you'd be up here saying, this judge imposed a consecutive sentence without telling us why. You're right, Your Honor. Because it didn't—nobody discussed it or said anything about it. It just showed up in the judgment. Isn't that right? That's correct. Of course, that this is a 2255 proceeding means that that is not before the court. Well, I understand that, but— But one of the reasons—one thing I did want to comment on, one of the reasons why we respectfully request the court not to send this back is, as I noted, this court has been clear that in order to re—to order resentencing on a non-challenged count, there has to be a predicate finding of interrelatedness. And our argument is that's a determination that's bound to the record. And so that we—the solution is not to send it back to the district court to recall from his memory what he intended, but to look and make an inquiry as to whether on this record there's evidence of interrelatedness. And our argument is that the intentional decision to sentence this case as he did suggests that that was an intentional allocation of two independent sentences. Is it our determination of interrelatedness based on our consideration of the record, not on unspoken things that the district court might have thought? I believe that's correct because this is a determination that must be bound on the record. And the reason not to send it back is that we're just going to—we could be up here again if the district court makes an interrelatedness determination without that predicate finding of interrelatedness in the record. And we believe that that's just simply absent. And so it would be reversible error for him to conclude on that. Let me just ask this. I know it is, but I don't understand how you can argue lack of interrelatedness when the reason you're here is that there was an error committed in separating these two. There was one conspiracy. That's why one of these goes out. The government concedes that. There was at least two different kinds of drugs that were involved in that conspiracy. If those aren't interrelated, I don't—I mean, it's the interrelatedness that leads to the multiplicity argument. I think you're trying to have it both ways is my— Can I make two comments on that? Sure. The first is, as I mentioned earlier, this court has regularly—I can't say it's the majority of the time, but regularly vacates without resentencing in the multiplicity context. And so I don't think this court has adopted a per se— But not—there haven't been any—are there any of those cases where the judge split the sentence like this? There are—yes, there are some that involve consecutive sentences. United States v. Avery is one example where there was a conspiracy count that was vacated because it was multiplicitous with a continuing criminal enterprise scenario. Well, that's not two kinds of drugs in one fell swoop, though. Right, but it entailed, again, the same double jeopardy problem that we encounter here. All right. Thank you. Glasser. Good morning. William Glasser for the United States. At the sentencing hearing, the district court made clear that it thought a guideline sentence of 360 months was an appropriate sentence for the defendant. The court said nothing about whether or not the sentence ought to be run consecutive, as to each count. Later, when the district court entered the judgment, it did run the sentences consecutive, but we don't know why the district court did that. At this point, it is appropriate for this court to remand to the district court to, at its discretion, resentence on the count that is not vacated. Now, there's been some dispute as to what the majority rule is. In this circuit, there is not a sort of general rule as to whether the court remands for resentencing. Other circuits actually have adopted a general rule. The Seventh Circuit, for example, has a general rule that when a count is vacated, then it goes back for the district court to reconsider the sentence on all counts. There's authority from other circuits, such as the First, that's similar. This court has focused on the interrelatedness, but it has never said that interrelatedness is an essential predicate finding. It simply examined, for example, in the recent Foster case, examined whether there is any reason to send it back to the district court to effectuate its sentencing intent. In the Foster case, there was no reason to do so. The sentences on the drug counts were concurrent. The sentence on the 924C count, the district court had specifically said it was not considering that consecutive sentence in structuring the rest of the sentencing package. This case is very different from Foster. Here there is a very strong reason for the district court to be allowed to reconsider the sentence on the remaining count, and that is, as indicated by the record, the court thought that a guideline sentence was appropriate for the defendant's conduct. Was there some prior offenses or armed criminal conviction or any of that that was in play? Yes, Your Honor, in two ways. First of all, as it relates to the statutory penalties, he qualified for the higher penalties, the 20 to life and the 10 to life on the cocaine and heroin counts, based on his prior conviction for a drug trafficking offense. He also qualified as a career offender for perspicillative sentences. Yes, that was what I was trying to articulate. Actually, the career offender guidelines didn't actually affect the sentence in this case, however, because the drug calculations actually led to a higher offense level, and therefore, as the court noted at sentencing, it was applying the higher offense level rather than the career offender guideline. If the court has no further questions, we would yield the rest of our time. Did you have anything further, Mr. Morrell? Your Honor, I'd like to make two points in rebuttal. The first is the government relies upon language from the sentencing transcript to the effect that the district court viewed a 30-year total sentence as necessary and appropriate, but our position is that merely encanting the language of 3553 is not a sufficient basis to overcome the contrary indications of intent that are expressed in the consecutive sentences. In fact, this court's decision in United States v. Ambrose, it made precisely that point. It rejected the idea that its precedent somehow established that all 3553 guideline sentences are somehow interrelated. And so I think merely relying upon that language in the sentencing transcript is insufficient for the government to meet its burden of proving interrelatedness. But on the second point, the government suggests that interrelatedness is itself not a requirement necessary to justify resentencing. This court's decision in Pasquarelle simply controverts that proposition. In that decision, the court found that a finding of interrelatedness was necessary to avoid double jeopardy problems that would attend a resentencing on a non-challenged count, and that concern is certainly at play in this case where the government is essentially asking for a second bite at the apple to seek to reimpose the total 30 years but on a single count. And as we raised in our brief, that creates some double jeopardy concerns that are resolved if the sentences are, in fact, interrelated. But in this case, as we've noted, we don't believe that they are, unless there's no further questions. We appreciate the argument both of you have given. We'll consider the case carefully. And, Mr. Morrell, we're mindful that you were appointed under the Criminal Justice Act to represent Mr. Maxwell, and we appreciate very much your accepting that appointment and the zealous representation. It's a shame in this case that nobody could convey to Mr. Maxwell what a good job you've done, whatever the outcome is. Thank you, Your Honor. We thank you. All right, the clerk may call the next case.